1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  DANIEL PASTOR (CABN 297948)
   Assistant United States Attorney
5  
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-6778
7      FAX: (415) 436-7234
       daniel.pastor@usdoj.gov
8  
   Attorneys for United States of America

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12

13 UNITED STATES OF AMERICA,           ) Case No. CR20-0372-LHK
                                       )
14         Plaintiff,                  ) **MEMORANDUM IN SUPPORT OF**
                                       ) **GOVERNMENT'S MOTION TO DETAIN**
15     v.                              ) **DEFENDANT**
                                       )
16 NICHOLAS MENDOZA HIMAN,             )
                                       )
17         Defendant.                  )

18

19     In the days before his arrest on June 5, 2020, Defendant Nicholas Himan asked an associate

20 where he could get an untraceable gun to kill a drug supplier he believed had cheated him. When

21 Himan's associate did not respond quickly enough, Himan texted him that he had traveled almost 150

22 miles roundtrip to obtain the gun. Himan's text messages are corroborated by statements he made to

23 others. Before texting his associate, Himan asked another drug supplier where he could get a gun.

24 Himan also told his then roommate (his former jailmate) that he had a gun, and showed his roommate

25 the holster he purchased for the gun. Himan's roommate was disturbed to learn that Himan had a gun

26 because of what the roommate described as Himan's pattern of unpredictable behavior.

27     The FBI recovered the ankle holster Himan showed his roommate during a search of Himan's

28 room on the day Himan was arrested. The gun, however, remains missing. Three other guns are

MEM. I/S/O GOV'T MOTION TO DETAIN        1

registered to the defendant. The status of those guns is unclear. As the pretrial services report indicates, Himan's family is unwilling to assist him with bail. Indeed, Himan's mother, with whom he has lived for most of his adult life, has a restraining order prohibiting Himan from contacting her.

In light of Himan's criminal record including multiple bench warrants for failure to appear and his alarming text messages about obtaining a gun to kill a drug supplier (which led the FBI to accelerate his arrest), Himan cannot overcome the statutory presumption in favor of detention in this case. The Court should order him detained.

## I. FACTS

### A. Defendant's History and Characteristics

#### 1. Access to Large Amounts of Cash

Nicholas Himan is a long-time drug dealer who has demonstrated access to large amounts of cash. Quite unusually, he gambled almost $346,000 at slot machines at a Northern California casino in 2017, and almost $225,000 at slot machines at the same casino in 2018. In 2019, even while spending a significant amount of time in jail, Himan gambled more than $42,000 in slot machines at the same casino. "Gambled" is a generous term. It is widely-known that slot machines are the worst possible bet at a casino. Yet, Mr. Himan lost only 3.5% in 2019, 7.6% in 2018, 4.4% in 2017.

The evidence suggests that Himan's casino activity was actually a crude money-laundering scheme. Casino records show that on September 2, 2017, Himan inserted $7,363 in U.S. currency into various slot machines and withdrew the same amount without playing a single game. On September 5, 2017, Himan inserted $13,377 in U.S. currency into various slot machines. The same day, he withdrew that money from the slot machines without playing a single game. The next day, September 6, Himan inserted $5,770 into slot machines and then withdrew it, again without playing. Himan also regularly uses cryptocurrency, presumably for its anonymous features. Prior to Himan's first drug sale to the undercover agent in this case, he visited a Bitcoin money launderer and told the undercover that he used Bitcoin because of its anonymous features.

### B. Himan's Erratic Pattern of Behavior

In January 2019, Himan was arrested for possession of drugs, paraphernalia, and driving under the influence. In November 2019, based on the January arrest, he sustained convictions for DUI, driving

MEM. I/S/O GOV'T MOTION TO DETAIN            2

with a suspended license, and driving recklessly. In the interim, in June 2019, he was arrested for possessing drug paraphernalia and giving false identification to a peace officer. In August 2019, he was arrested for possessing a stolen vehicle, DUI, possessing personal identification with the intent to defraud, and embezzling a rented vehicle. He was convicted of one count of possessing identification with the intent to defraud.

On September 4, 2019, Himan was arrested for impersonating his brother, receiving stolen property, and hit-and-run with property damage, after an associate and Himan drove an Audi into the front door of a Western Dental office. Himan fled the scene and attempted to conceal the evidence of the incident by parking the stolen Audi in the driveway of a random citizen.

On September 24, 2019 (20 days later), Himan was cited by the Oakland Police Department for possession of drug paraphernalia.

On or about October 15, 2019, European authorities intercepted a parcel addressed to Himan at his mother's address in Hayward. The parcel contained five kilograms of MDMA.

On October 31, 2019 (two weeks later), Himan was found in San Francisco in yet another stolen car. The car was parked on the median of Park Presidio Boulevard and police found 500 Xanax pills packaged for sale.

On November 8, 2019, a week later, the defendant was arrested again for DUI and possession of unlawful paraphernalia. Another week later, on November 12, 2019, Mr. Himan was arrested again for possessing drugs, paraphernalia, DUI, and driving on a suspended license. In January 2020, Himan was convicted of vehicle theft. In his interactions with the undercover officer in this case, Himan bragged that he "boosted cars," and suggested that if he were ever caught with drugs, he would simply tell the police that he got them from a "random black guy with a white t-shirt."

### C.     Purchase of a Gun to Kill a Drug Dealer with whom Himan Had Money Problems

Shortly before his arrest in this case, Himan drove almost 150 miles roundtrip to obtain an untraceable firearm that he stated he planned to use to kill a source of supply with whom he had money issues. Himan texted a drug associate ("C.C.1") on June 2, 2020, asking where he could purchase a

"wally," a slang term for an untraceable gun. Himan did so using Signal, an end-to-end encrypted messaging application favored by criminals to evade law enforcement detection.

| HIMAN | Issue with the money with primo |
|---|---|
| HIMAN | I need Wally |
| HIMAN | Where can I get one |
| HIMAN | Tonight |
| C.C.1 | What u mean issue with the money |
| HIMAN | I need a fuckin Wally |
| C.C.1 | Why |
| HIMAN | You know where one is rn |
| HIMAN | Yes or no |
| C.C.1 | No I don't |
| HIMAN | How am I suppose to handle our money being fucked with |
| C.C.1 | u need one to get money from primo |
| C.C.1 | Go get the money from fucking primo that piece of shit |
| C.C.1 | That's a lot of money |
| C.C.1 | Can u catch him slinging |
| HIMAN | Im start laying niggas down |
| C.C.1 | What he say |
| HIMAN | Im driving still |
| C.C.1 | U really gonna lay down or u good? |
| HIMAN | Get me one and read the newspaper |
| C.C.1 | Do you get primo real address |
| HIMAN | I know where to find him |
| C.C.1 | Ok just calm down not worth it |
| C.C.1 | Don't resort to violence peaceful protest out here brotha |
| HIMAN | Its different when you in the field |
| HIMAN | I'm mad of course |

The next day, the text message conversation continued, and Himan indicated that he was picking up the untraceable gun in Richmond.

| C.C.1 | Wyd I'm gonna call [U/I] I'm out of meeting |
|---|---|
| HIMAN | Richmond |
| C.C.1 | Wyd there |
| HIMAN | Picking up Wally |
| C.C.1 | Bro do not do that u trippin |
| C.C.1 | It's not worth it |
| C.C.1 | You smarter than that |
| HIMAN | I'm not trippin I'll do it the smart way |
| C.C.1 | Don't get one dude |
| C.C.1 | Dumbest thing u can do u do |
| C.C.1 | You don't need that its not going to solve anything |

### D. The Charged Offense and Himan's Dark Web Drug Dealing

On June 2, 2020, Himan sold approximately two pounds of methamphetamine to an undercover officer. On June 5, 2020, the date of his arrest, Himan had set up a deal with his supplier to sell four pounds of methamphetamine to the same undercover officer.

During the execution of a federal search warrant at Himan's apartment, agents seized Himan's electronic devices, a gun holster, almost 200 grams of methamphetamine packaged for sale, and significant amounts of postal packaging and a list of names and addresses with associated amounts of narcotics, suggesting that Himan had been selling drugs on the "dark web" and mailing the drugs.

While agents found the gun holster that Himan had just purchased and shown to his roommate, agents could not locate the gun about which Himan had texted. Nor were agents able to locate the three other guns that are apparently registered to Himan.

## II. DISCUSSION

### A. Legal Standard for Detention in a Presumption Case

To detain a defendant pending trial based on risk of flight, the government must show by a preponderance of the evidence that there are no conditions that will reasonably assure the Defendant's appearance as required. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). To detain a defendant based on danger to the community, the Court must find by clear and convincing evidence that there are no conditions which "will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

In cases such as this one, where there is probable cause to believe that the Defendant violated the Controlled Substances Act and faces a maximum of 10 years or more in prison, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure the Defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). In such a case, a burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.). The presumption is not so weak that whenever the defendant introduces evidence, "the

MEM. I/S/O GOV'T MOTION TO DETAIN          5

presumption 'bursts' and totally disappears, allowing the judge . . . to decide the question without reference to the presumption." *Id.* Since a defendant can "always provide the magistrate with *some* reason … a 'bursting bubble' approach might render the presumption virtually meaningless, contrary to Congress's clear intent." *Id.* (emphasis added).

If, and only if, the Court finds that the defendant has rebutted the statutory presumption of detention, the Court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence;[1] (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

**B.     The Defendant is a Danger to the Community**

        **1.     The Defendant Told an Associate That He Purchased a Gun and Planned to Use It to Kill a Drug Supplier.**

The defendant cannot overcome the statutory presumption that he is a danger to the community. As described above, in the days before his arrest, Himan asked an associate where he could get an untraceable firearm because he was going to "start laying niggas down," specifically, he wanted to kill a drug supplier with whom he had a financial issue.  Himan told the associate that he should "get me one and read the newspaper."  In response to concerns from the associate, Himan assured the associate that he would "do it [the homicide] the smart way."  The next day, Himan confirmed that he had traveled nearly 150 miles roundtrip, from Morgan Hill to Richmond, to obtain that firearm.

It is true that the FBI never recovered the firearm, and the defendant may seek to minimize his statements as braggadocio. However, two important facts undermine that narrative.  First, Himan also told his roommate that he had a firearm.  Second, during a search of the Himan's belongings, agents found a gun holster. Under these circumstances, the more likely explanation is that Himan "stashed," or hid, the untraceable firearm somewhere, and that if released, he would have access to it.

---

[1] In the Ninth Circuit, the weight of the evidence is the least important factor.

MEM. I/S/O GOV'T MOTION TO DETAIN          6

### 2. The Defendant's Drug Dealing Poses a Continuing Danger to the Community.

In the latter half of 2019, Himan was arrested nearly once a month. In September 2019, Himan was in the vehicle (which he allegedly stole), when an associate drove into the front door of a Western Dental, nearly striking a teenage girl. After his associate was detained by bystanders, Himan fled the scene and parked the stolen vehicle at the residence of a random person.

The following month, October 2019, Himan was found in San Francisco in another stolen Audi, parked on the median. He had 500 Xanax pills that were packaged for sale.  A week later, he was again arrested for DUI and possession of drug paraphernalia.  A week after that, Himan was arrested again.

Equally important, Himan's drug dealing poses a continuing danger to the community. On October 15, 2019, European authorities intercepted a parcel containing five kilograms of MDMA that was addressed to Himan.  Several weeks later, Himan was arrested by SFPD with the 500 Xanax pills packaged for sale.

During the FBI's investigation of this case, Himan sold more than a pound of methamphetamine to an undercover officer and arranged a deal for an additional four pounds with his supplier.  He also told the undercover that he sold drugs to end users all over the country, which was corroborated by mailing addresses that the FBI found among his belongings.

"Danger" does not just mean the threat of physical harm. The defendant's ongoing drug dealing by itself constitutes a danger to the community sufficient to justify pretrial detention. *United States v. Parodi*, No. CR 08-0083 PJH, 2008 WL 683421, at *3 (N.D. Cal. Mar. 7, 2008) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity . . . ."); *see also United States v. Wolf,* No. CR 15-263-EJD, 2015 WL 4573039 (N.D. Cal. Jul. 29, 2015) (Davila, J.) ("Because this evidence demonstrated Defendant's continuing involvement with the distribution of drugs, the danger to the community he posed if released was established by clear and convincing evidence"). The danger in this case is particularly acute because, despite Himan's repeated arrests by law enforcement, he has not been deterred from continuing to sell illegal drugs.

### C. There Are No Conditions That Will Reasonably Assure Himan's Presence at Court Proceedings.

Particularly in light of the statutory presumption that he is a flight risk, the Court can readily find by a preponderance of the evidence no combination of conditions is sufficient to ensure that Himan will appear in court and face the charges against him. Himan is a United States citizen, but he has no permanent residence. Although he grew up in the Bay Area, he has little in the way of family ties that would convince him to stay in the area for Court. His relatives are unwilling to assist with bail, presumably because they do not trust him to comply with conditions this Court might set or are afraid of him. He holds a Master's Degree but is unemployed.

Himan's demonstrated access to large sums of cash and the strength of the evidence against him, including undercover buy recordings and Himan's text messages, make him a serious risk of flight. While Himan was arrested with just a few thousand dollars, he also uses cryptocurrency, which is designed to be anonymous and easy to hide. The fact that Himan faces a significant sentence (a minimum of five years, but based on the quantity of drugs he is alleged to have sold, eligible for a ten-year minimum) means he has great incentive to flee. *See Parodi* at *2 ("[I]n cases with large sums of cash available to the defendant the court may draw the conclusion that the defendant has the means to abscond. A defendant's financial condition and the length of sentence he or she faces are of particular importance in assessing the risk of flight."); *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) (the preponderance of the evidence shows a risk of flight where, among other factors, the weight of the evidence is enough to alert the defendant to a "reasonable possibility of conviction").

### III. CONCLUSION

The government respectfully requests that the Court detain the defendant as both a danger to the community and another person, and as serious risk of non-appearance pending the resolution of this case. The defendant has requested a combined change of plea and sentencing, which has been set for April 7, 2021.

\\
\\
\\

MEM. I/S/O GOV'T MOTION TO DETAIN                8

| | | |
|---|---|---|
| 1 | DATED: December 20, 2020 | Respectfully submitted, |
| 2 | | DAVID L. ANDERSON |
| 3 | | United States Attorney |
| 4 | |      /s/ |
| | | DANIEL PASTOR |
| 5 | | Assistant United States Attorney |