1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

2  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
3
   DANIEL PASTOR (CABN 297948)
4  Assistant United States Attorney

5      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
6      Telephone: (415) 436-6778
       FAX: (415) 436-7234
7      daniel.pastor@usdoj.gov

8  Attorneys for United States of America

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11                              SAN JOSE DIVISION

12

13 UNITED STATES OF AMERICA,           )  Case No. CR20-0372-LHK
                                       )
14         Plaintiff,                  )  **UNITED STATES' MOTION TO REVOKE**
                                       )  **RELEASE ORDER**
15     v.                              )
                                       )  Date: January 13, 2021
16 NICHOLAS MENDOZA HIMAN,             )  Judge: Hon. Lucy H. Koh
                                       )
17         Defendant.                  )

18

19      PLEASE TAKE NOTICE that on January 13, 2021 at a time convenient for the Court, or as soon

20 thereafter as possible, the United States, pursuant to 18 U.S.C. § 3145, will and hereby does appeal the

21 magistrate judge's release order issued on January 13, 2020, and moves this Court for entry of an order

22 revoking the magistrate court's release order.

23      Before his arrest on June 5, 2020, Defendant Nicholas Himan asked an associate where he could

24 get an untraceable gun to kill a drug supplier who he believed had cheated him. When Himan's

25 associate did not respond quickly enough, Himan texted that he had traveled almost 150 miles roundtrip

26 to obtain the gun. Himan's texts are corroborated by statements he made to others. Before texting his

27 associate, Himan asked another drug supplier where he could get a gun. Himan also told his then

28 roommate (his former jailmate) that he had a gun and showed his roommate the holster he purchased for

MEM. I/S/O GOV'T MOT. TO REVOKE RELEASE ORDER
                                          1

the gun.  Himan's roommate was disturbed to learn that Himan had a gun because of what the roommate described as Himan's pattern of unpredictable behavior.  On the day Himan was arrested, the FBI recovered the ankle holster Himan had earlier shown his roommate. The gun, however, remains missing. Three other guns are registered to the defendant. The status of those guns is unclear.

While detained at Santa Rita Jail, Himan contacted a government witness through an intermediary with the message: Nick Himan says hello.  Agents were alarmed by Himan's contact with the witness because the timing suggested that Himan wanted the witness to know that Himan believed the witness was responsible for the federal charges Himan is facing.  Himan knows where the witness and his family reside.

As the Pretrial Services Report indicates, Himan's closest family is unwilling to assist him with bail.  Indeed, Himan's mother, with whom he has lived for most of his adult life, has a restraining order prohibiting Himan from contacting her.

In light of Himan's criminal record including multiple bench warrants for failure to appear and Himan's alarming texts about obtaining a gun to kill a drug supplier (which led the FBI to accelerate his arrest), as well as his communication with a government witness from jail, Himan cannot overcome the statutory presumption in favor of detention in this case. The Court should order him detained.

## I.   STANDARD OF REVIEW

On appeal of a magistrate judge's release order, this Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).  The record is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make its own 'de novo' determination of the facts," and the "ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193.

To detain a defendant based on danger to the community, the Court must find by clear and convincing evidence that there are no conditions which "will reasonably assure the safety of any other person and the community."  18 U.S.C. § 3142(f)(2)(B).  To detain a defendant pending trial based on risk of flight, the government must show by a preponderance of the evidence that there are no conditions that will reasonably assure the Defendant's appearance as required. *See United States v. Motamedi*, 767

F.2d 1403, 1406 (9th Cir. 1985). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

In cases such as this one, however, where there is probable cause to believe that the defendant violated the Controlled Substances Act and faces a maximum of 10 years or more in prison, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure the safety of the community and the defendant's appearance. 18 U.S.C. § 3142(e)(3)(A). In such a case, a burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.). The presumption is not so weak that whenever the defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge . . . to decide the question without reference to the presumption." *Id.* Since a defendant can "always provide the magistrate with *some* reason … a 'bursting bubble' approach might render the presumption virtually meaningless, contrary to Congress's clear intent." *Id.* (emphasis added).[1]

## II.  DETENTION HEARING

The magistrate judge held a detention hearing on December 21, 2020 and refused to release Himan out of concern about his access to firearms and the danger he presented. The magistrate judge noted that the defendant had no family support and no one willing to assist him with bail. Nonetheless, the magistrate judge continued the hearing and ordered that the defendant be assessed for drug treatment at New Bridge. At the resumed hearing on January 13, 2021, the magistrate judge ordered that Himan be released to New Bridge. The government moved for a stay pending this appeal which was granted.

---

[1] If, and only if, the Court finds that the defendant has rebutted the statutory presumption of detention, the Court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

MEM. I/S/O GOV'T MOT. TO REVOKE RELEASE ORDER

## III. DISCUSSION

### A. Shortly Before Arrest, Himan Told a Drug Associate That He Purchased a Gun and Planned to Kill a Drug Supplier.

The defendant cannot overcome the statutory presumption that he is a danger to the community. Before his arrest in this case, Himan drove almost 150 miles roundtrip to obtain an untraceable firearm that he stated he planned to use to kill a drug source of supply with whom he had a dispute. Himan texted a drug associate ("C.C.1") on June 2, 2020, asking where he could purchase a "wally," a slang term for an untraceable gun. Himan told the associate that he should "get me one and read the newspaper." In response to concerns from the associate, Himan assured the associate that he would "do it the smart way." Himan texted using Signal, an end-to-end encrypted messaging app favored by criminals to evade law enforcement detection.

| | |
|---|---|
| HIMAN | Issue with the money with primo |
| HIMAN | I need Wally |
| HIMAN | Where can I get one |
| HIMAN | Tonight |
| C.C.1 | What u mean issue with the money |
| HIMAN | I need a fuckin Wally |
| C.C.1 | Why |
| HIMAN | You know where one is rn |
| HIMAN | Yes or no |
| C.C.1 | No I don't |
| HIMAN | How am I suppose to handle our money being fucked with |
| C.C.1 | u need one to get money from primo |
| C.C.1 | Go get the money from fucking primo that piece of shit |
| C.C.1 | That's a lot of money |
| C.C.1 | Can u catch him slinging |
| HIMAN | Im start laying niggas down |
| C.C.1 | What he say |
| HIMAN | Im driving still |
| C.C.1 | U really gonna lay down or u good? |
| HIMAN | Get me one and read the newspaper |
| C.C.1 | Do you get primo real address |
| HIMAN | I know where to find him |
| C.C.1 | Ok just calm down not worth it |
| C.C.1 | Don't resort to violence peaceful protest out here brotha |
| HIMAN | Its different when you in the field |
| HIMAN | I'm mad of course |

MEM. I/S/O GOV'T MOT. TO REVOKE RELEASE ORDER
4

The next day, Himan confirmed that he had traveled nearly 150 miles roundtrip, from Morgan Hill to Richmond, to obtain the firearm.

| C.C.1 | Wyd I'm gonna call [U/I] I'm out of meeting |
|---|---|
| **HIMAN** | **Richmond** |
| C.C. 1 | Wyd there |
| **HIMAN** | **Picking up Wally** |
| C.C. 1 | Bro do not do that u trippin |
| C.C.1 | It's not worth it |
| C.C.1 | You smarter than that |
| **HIMAN** | **I'm not trippin I'll do it the smart way** |
| C.C.1 | Don't get one dude |
| C.C.1 | Dumbest thing u can do u do |
| C.C.1 | You don't need that its not going to solve anything |

Himan seeks to minimize his statements as braggadocio, noting that the FBI did not recover the firearm in the search of his apartment; however, two important facts undermine that narrative. First, Himan told his roommate that he had a firearm. Second, during a search of the Himan's belongings, agents found the gun holster that Himan had earlier shown to his roommate. Under these circumstances, the more likely explanation is that Himan hid the untraceable firearm somewhere, and that if released, Himan would have access to it.

### B. While in Jail, Himan Reached Out to a Witness Through an Intermediary

While detained at Santa Rita Jail, Himan contacted a government witness through an intermediary (the witness who Himan had texted about the untraceable firearm) with the message: Nick Himan says hello. Although superficially innocuous, agents were alarmed by Himan's contact with the witness because the timing suggested that Himan wanted the witness to know that Himan believed the witness was responsible for the federal charges brought against him. Himan knows where the government witness and his family reside. Given Himan's threats against his drug associate and his erratic behavior, the government believes Himan presents a danger to the witness and his family that cannot be mitigated through conditions.

### C. Himan's Erratic Pattern of Criminal Behavior Prior to Arrest

In the latter half of 2019, Himan was arrested nearly once a month. In September 2019, Himan was in a car (which he allegedly stole), when his associate drove the car into the front door of a Western

MEM. I/S/O GOV'T MOT. TO REVOKE RELEASE ORDER

5

Dental office, nearly striking a teenage girl. After Himan's associate was detained by bystanders, Himan fled the scene and parked the car at a residence.

On October 15, 2019, European authorities intercepted a parcel containing five kilograms of MDMA that was addressed to Himan at his mother's Hayward residence. On October 31, 2019, Himan was found in San Francisco in a stolen Audi, parked on the median of Park Presidio Boulevard. He had 500 Xanax pills that were packaged for sale. A week later, Himan was again arrested for DUI and possession of drug paraphernalia. A week after that, Himan was arrested again.

During the FBI's investigation of this case, Himan sold more than a pound of methamphetamine to an undercover officer and arranged a deal with his supplier to sell an additional four pounds to the undercover officer. He also told the undercover that he sold drugs to users all over the country. During the execution of a search warrant at Himan's apartment, agents seized Himan's electronic devices, the gun holster, almost 200 grams of methamphetamine packaged for sale, and significant amounts of postal packaging as well as a list of names and addresses with associated amounts of narcotics, which suggested that Himan had been selling drugs on the "dark web" and mailing the drugs through the postal service.

"Danger" does not mean only the threat of physical harm. The defendant's ongoing drug dealing constitutes a danger to the community sufficient to justify pretrial detention. *United States v. Parodi*, No. CR 08-0083 PJH, 2008 WL 683421, at *3 (N.D. Cal. Mar. 7, 2008) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity . . . ."); *see also United States v. Wolf,* No. CR 15-263-EJD, 2015 WL 4573039 (N.D. Cal. Jul. 29, 2015) (Davila, J.) ("Because this evidence demonstrated Defendant's continuing involvement with the distribution of drugs, the danger to the community he posed if released was established by clear and convincing evidence"). The danger in this case is particularly acute because, despite Himan's repeated arrests by law enforcement, he has not been deterred from continuing to sell illegal drugs.

### D. There Are No Conditions That Will Reasonably Assure Himan's Presence at Court Proceedings.

Particularly in light of the statutory presumption that Himan is a serious risk of flight, the Court

MEM. I/S/O GOV'T MOT. TO REVOKE RELEASE ORDER

can readily find by a preponderance of the evidence no combination of conditions is sufficient to ensure Himan will appear in court and face the charges against him.  Himan is a United States citizen, but he has no permanent residence. He holds a Master's Degree, but he is unemployed. Although he grew up in the Bay Area, he has little in the way of family ties that would persuade him to stay in the area for Court. His relatives are unwilling to assist him with bail because they do not trust him to comply with conditions or are afraid of him. His mother has a restraining order against him.

### III.    CONCLUSION

The government respectfully requests that the Court detain the defendant as a danger to the community and as serious risk of non-appearance. The defendant has requested a combined change of plea and sentencing, which is set for April 7, 2021.

DATED: January 13, 2021                              Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

                     /s/
DANIEL PASTOR
Assistant United States Attorney

MEM. I/S/O GOV'T MOT. TO REVOKE RELEASE ORDER

7