STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6778
    FAX: (415) 436-7234
    Daniel.Pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>NICHOLAS MENDOZA HIMAN,<br><br>    Defendant. | NO. 20-CR-0372-LHK<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Lucy H. Koh<br>Sentencing Date: May 5, 2021<br>Time: 1:00 p.m. |

## I.   INTRODUCTION

Defendant Nicholas Mendoza Himan has informed the Court that he intends to plead guilty to one count of Possession with Intent to Distribute 50 Grams or More of a Mixture or Substance Containing Methamphetamine, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). Himan made two methamphetamine sales totaling 505.8 grams of methamphetamine to an undercover FBI agent and had agreed to sell four pounds of methamphetamine on the day he was arrested. *See* PSR ¶¶ 11-16. The

FBI did not complete the third buy and instead accelerated Himan's arrest after learning that had Himan sent text messages threatening to kill a drug associate who owed him money and reporting that he had purchased an untraceable firearm. PSR ¶ 16.[1] During Himan's arrest, agents seized Himan's electronic devices, a gun holster, and roughly 193.5 grams of methamphetamine as well as postal packaging and a list of names, addresses, and narcotics quantities. The postal packaging and the drug ledger suggested that Himan had been selling drugs on the Dark Net and mailing the drugs through the U.S. Postal Service. Himan waived indictment, consented to the preparation of a pre-plea Presentence Report (PSR), and requested a combined change of plea and sentencing date. In the parties' Plea Agreement, Himan agreed that he is responsible for possessing with intent to distribute 699 grams of a mixture or substance containing methamphetamine.

## II. SENTENCING GUIDELINES CALCULATIONS

As reflected in the PSR, the Sentencing Guidelines calculation for Himan's offense is as follows:

|   |   |   |   |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(c)(4): | | 30 |
| b. | Offense Characteristic: Safety Valve, U.S.S.G. § 2D1.1(b)(18) | | -2 |
| c. | Acceptance of Responsibility, U.S.S.G. § 3E1.1: | | -3 |
| d. | Adjusted Offense Level: | | 25 |

*See* PSR ¶¶ 25-34, 108. The parties reached no agreement on Mr. Himan's criminal history category. Based on the draft PSR, the government requested that the Probation Officer clarify whether Himan had served 108 days in jail for the conviction in Paragraph 40. Having received that clarification, the government agrees with the Probation Officer that Himan's criminal history score is seven and that his criminal history category is IV. PSR ¶ 44. Assuming a three-point reduction of acceptance of responsibility and a two-point safety-valve reduction, the Guidelines range for imprisonment for offense level 25 and criminal history category IV is 84 to 105 months.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the

---

[1] The texts, in addition to Himan's erratic criminal behavior in the months before his arrest, led the Court to detain him. *See* Dkt. 38; Dkt. 44.

seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). The government recommends an 84-month sentence as sufficient but not greater than necessary to achieve the purposes of sentencing.

### A. Shortly Before His Arrest, Himan Told a Drug Associate That He Purchased a Gun and Planned to Kill a Drug Supplier.

Before his arrest in this case, Himan drove almost 150 miles roundtrip to obtain an untraceable gun that he planned to use to kill a drug source of supply with whom he had a dispute. Himan texted a drug associate ("C.C.1") on June 2, 2020, asking where he could purchase a "wally"—a slang term for an untraceable gun. Himan told the associate that he should "get me one and read the newspaper."

| | |
|---|---|
| HIMAN | Issue with the money with primo |
| HIMAN | I need Wally |
| HIMAN | Where can I get one |
| HIMAN | Tonight |
| C.C.1 | What u mean issue with the money |
| HIMAN | I need a fuckin Wally |
| C.C.1 | Why |
| HIMAN | You know where one is rn |
| HIMAN | Yes or no |
| C.C.1 | No I don't |
| HIMAN | How am I suppose to handle our money being fucked with |
| C.C.1 | u need one to get money from primo |
| C.C.1 | Go get the money from fucking primo that piece of shit |
| C.C.1 | That's a lot of money |
| C.C.1 | Can u catch him slinging |
| HIMAN | Im start laying niggas down |
| C.C.1 | What he say |
| HIMAN | Im driving still |
| C.C.1 | U really gonna lay down or u good? |
| HIMAN | Get me one and read the newspaper |
| C.C.1 | Do you get primo real address |
| HIMAN | I know where to find him |
| C.C.1 | Ok just calm down not worth it |
| C.C.1 | Don't resort to violence peaceful protest out here brotha |
| HIMAN | Its different when you in the field |
| HIMAN | I'm mad of course |

The next day, Himan texted that he had traveled nearly 150 miles roundtrip, from Morgan Hill to Richmond, California, to obtain the untraceable firearm.  In response to the associate's attempts to dissuade him from doing anything rash, Himan responded: "I'm not trippin I'll do it the smart way."

| C.C.1 | Wyd I'm gonna call [U/I] I'm out of meeting |
|---|---|
| **HIMAN** | **Richmond** |
| C.C. 1 | Wyd there |
| **HIMAN** | **Picking up Wally** |
| C.C. 1 | Bro do not do that u trippin |
| C.C.1 | It's not worth it |
| C.C.1 | You smarter than that |
| **HIMAN** | **I'm not trippin I'll do it the smart way** |
| C.C.1 | Don't get one dude |
| C.C.1 | Dumbest thing u can do u do |
| C.C.1 | You don't need that its not going to solve anything |

**B.     While in Jail, Himan Reached Out to a Witness Through an Intermediary**

While detained at Santa Rita Jail in this case, Himan contacted a government witness through an intermediary (the witness is the person Himan texted about purchasing the untraceable firearm) with the message: Nick Himan says hello.  Although seemingly innocuous, the FBI was alarmed by Himan's contact with the witness because the timing suggested that Himan wanted the witness to know that he believed the witness was responsible for the federal charges brought against him.

**C.     Himan's Erratic Pattern of Criminal Behavior Prior to Arrest**

In the second half of 2019, Himan was arrested nearly once a month.  In September 2019, Himan was in a car, which his companion drove into the front door of a Western Dental office, nearly striking a teenage girl.  On October 31, 2019, Himan was found in San Francisco in a stolen Audi, parked on the median of Park Presidio Boulevard.  He had 500 Xanax pills that were packaged for sale.  A week later, Himan was again arrested for DUI and possession of drug paraphernalia.  Given these arrests and Himan's statements that he was selling methamphetamine to support his own significant drug use (*see* PSR ¶¶ 73, 75), the government supports a recommendation that Himan be placed in the Bureau of Prisons' Residential Drug Abuse Treatment Program (RDAP).  With drug treatment and supervision, Himan's college education and his decade of healthcare industry work experience provide an opportunity for him to build a stable and productive life after completing his sentence.

\\

IV.     CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Himan to 84 months in custody, four years of supervised release, a $100 special assessment, and the forfeiture of $2,799 seized from him.

DATED:  April 28, 2021                                          Respectfully submitted,

STEHANIE M. HINDS
Acting United States Attorney

/s/ *Daniel Pastor*
DANIEL PASTOR
Assistant United States Attorney